**Marianna DISTASIO, Plaintiff–Appellant,**

v.

**PERKIN ELMER CORPORATION, Defendant–Appellee.**

**No. 97–7035.**

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1997.

Decided Aug. 27, 1998.

Neal L. Moskow, Ury & Moskow, L.L.C., (Frederic S. Ury & Vincent M. Marino on the brief) Westport, CT, for Plaintiff–Appellant Marianna Distasio.

Patrick W. Shea, Paul, Hastings, Janofsky & Walker LLP, (John W. Hamlin on the brief) Stamford, CT, for Defendant–Appellee Perkin Elmer Corporation.

BEFORE: OAKES, WALKER, Circuit Judges, REAL *, District Judge.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiff, Marianna Distasio, appeals from a judgment of the United States District Court for the District of Connecticut (Alfred V. Covello, *Chief Judge*) granting summary judgment dismissing her sexual harassment claim against the defendant, Perkin Elmer Corporation ("Perkin Elmer"). Distasio claims that she was subject to a hostile work environment because she was sexually harassed by a co-worker for four years, in violation of Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and that she was wrongfully discharged in retaliation for complaining about her hostile work environment.

The district court in granting summary judgment in favor of the defendant reasoned that (1) the four incidents of misconduct that Distasio either reported to her supervisor or that her supervisor independently observed did not establish a hostile work environment as a matter of law under Title VII and (2) the facts did not support a prima facie case for retaliatory discharge. *See Distasio v. Perkin Elmer Corp.*, No. 3:95–CV–323 (AVC), slip op. at 2 (D.Conn. Nov. 27, 1996). On appeal plaintiff contends that the district court incorrectly confined its consideration to the misconduct that Distasio reported to her supervisor, and failed to take into account other unreported incidents of sexual harassment. We agree with Distasio and accordingly we vacate that portion of the judgment and remand for further proceedings. The district court's grant of summary judgment in favor of Perkin Elmer on Distasio's retaliation claim is affirmed.

## BACKGROUND

We review the record at the summary judgment stage in the light most favorable to the non-movant, the plaintiff. Seen from the plaintiff's perspective, the record reveals the following. Distasio, a first-generation Italian immigrant, who was functionally illiterate, was hired by Perkin Elmer as a glass blower on March 8, 1982. She worked in the Special Products Division ("glass shop") with six other people, including Fortunato Santucci, under the supervision of group leader Alfonse Angel.

Plaintiff's working relationship with Santucci was normal until 1989, when, Distasio alleges, Santucci began to verbally and physically harass her. In her complaint, Distasio claims that over the next four years Santucci subjected her to "name calling of a sexually suggestive nature, repeated sexual propositions, exposure of his genitalia, touching of [her] breasts on more than one occasion, and other comments, all of which caused [her] to be uncomfortable, tense, hurt, disgusted, degraded, and otherwise uneasy at her job." She alleges that she was subject to "repeated sexual advances by Fortunato Santucci ... despite [her] express desire that he stop; name calling ..., and other forms of taunting including calling me a 'virgin.' " In an affidavit attached to her complaint Distasio asserts more generally that various members of the 'glass shop' taunted her, called her names, and teased her.

Distasio claims that initially Santucci used to hug her and that she "didn't mind it" until "he started to come [on] a little bit stronger." After she objected to Santucci and he continued, she decided to report Santucci's conduct to Angel. Distasio alleges that Angel learned, from either her reports or his own independent observations, of four specific incidents of unwanted sexual misbehavior by Santucci. In her deposition, Distasio testified that in her first report she told Angel that "[Santucci's] touching me, he likes me more than he should" and that if it did not stop she would be unable to continue working at Perkin Elmer. Distasio claims that Angel replied that she was crazy and that he refused to reprimand Santucci until he witnessed the misconduct himself.

Distasio's second report to Angel concerned an incident in which Santucci touched her feet with his feet when they were sitting

* The Honorable Manuel L. Real of the United States District Court for the Central District of California, sitting by designation.

at the same table in the break room. Distasio complained to Angel, he told her to change tables, and she did.

The third incident did not involve a report; Angel himself observed Santucci attempt to touch Distasio's chest. Afterwards, according to Distasio, Angel talked to Santucci and then told her that if Santucci touched her again she should tell him.

The final incident Angel was aware of occurred when Angel heard Distasio and Santucci arguing and inquired about what happened. Distasio stated in her deposition that Santucci had propositioned her to have sex with him and said, "Mary, what do you say, it's going to be good." They started to argue, and when Angel heard them fighting he came in and wanted to know what was happening. Distasio testified that she told Angel that Santucci said "he's in love with me." Angel started to leave the room but stopped and said to Distasio, "Don't say nothing, keep in here, because if you say something, you cannot work here no more." Thereafter, Distasio claims that she stopped reporting the harassment to Angel because he had told her not to say anything and threatened that she would lose her job if she did.

Distasio claims that Santucci's conduct continued and that on three separate occasions in 1993 he exposed himself to her, but she did not report it. On the first occasion, Santucci stood at his work bench, next to Distasio's work bench, unzipped his pants, and exposed his genitals. Distasio immediately ran out of the glass shop. On a second occasion Santucci again exposed himself, and Distasio ran away. Finally, on the third occasion, Santucci waited for her in a location where he knew she would return after her break, and when she did, he unzipped his pants and exposed his genitals. As before, Distasio ran away and did not complain to anyone.

The foregoing reported and unreported allegations of harassment occurred prior to the following incident that culminated in Distasio's discharge from Perkin Elmer. On November 11, 1993, Santucci asked Distasio to "cover for him" when he placed a box on a shelf in front of his work bench to shield his activities from the supervisor's view. Distasio removed the box from the shelf, and the acting supervisor came over. Santucci then started calling her names such as "virgin" and said that "she's a woman and because she's a woman she gets away with everything." She further alleges that "[a]ll of [her] co-workers were laughing at this tirade," that she "got very upset," and that Santucci then picked up a special box at her work station and threw it in the air and kicked it.

Distasio, upset by Santucci's actions, at first walked away from the area. But then she returned and struck Santucci in the arm with a glass tube. At her deposition, Distasio testified that she believed Santucci was going to strike her and that she acted in self-defense. After striking Santucci, Distasio walked away and happened to run into Robert Coppola, the Manager of Manufacturing. Coppola asked her what happened. Distasio told him and added "This shouldn't happen. We should work together." Coppola asked Distasio if she wanted to transfer. She responded that she did not, that Angel had left her plenty of work, and that Angel would take care of the problem when he returned on Monday.

On the following day, November 12, 1993, Distasio met to discuss the incident with Coppola, Human Resource Specialist Dorothy Lewis, and Special Products Group Leader Ken Kaufman. At this meeting, Distasio stated the facts surrounding the altercation over the box and the circumstances of her striking Santucci, but she did not mention any prior incidents of unwanted sexual harassment.

On November 15, 1993, Distasio was discharged from Perkin Elmer for violating the company's policy against fighting. Lewis told Distasio that she was not being fired because of her work performance, but because she had struck Santucci and he never touched her during the altercation. During this meeting, Distasio stated that "[Santucci] touch me in my mind and in my heart," but still did not report any specific incidents of prior sexual harassment.

Upon her separation from Perkin Elmer, Distasio was asked to sign various forms. At

first, she says, she refused because she did not understand them. She then changed her mind because she trusted Lewis, who was assisting her with the paperwork. Distasio, who, as noted, is functionally illiterate, signed an "employment termination checklist" stating that if there were "facts or extenuating circumstances that have not been taken into consideration in my termination," she would notify the defendant within five business days. Distasio did not communicate further with Perkin Elmer. Instead, she filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities pursuant to 42 U.S.C. §§ 2000e–5(b) and (e) and Conn.Gen. Stat. §§ 46a–60(a)(1). Distasio received a "notice of right to sue" from the EEOC and filed this action. Her complaint alleged (1) that she was subjected to a hostile work environment by Santucci's harassment and (2) that she was discharged in retaliation for complaining about her hostile work environment. Following discovery, the district court granted the defendant's motion for summary judgment. *Distasio*, No. 3:95–CV–323.

During the relevant time period, Perkin Elmer had a formal written sexual harassment policy, posted at the glass shop, that defined sexual harassment as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ..." and directed employees who believe that they have been subject to sexual harassment to report it to a supervisor, the department manager, the Human Resources Department, or the Manager of Corporate Equal Employment Opportunity Programs. After receiving a complaint, the policy required supervisors to:

> [i]nform[ ] the Human Resources Department of allegations of sexual harassment by employees or non-employees within 24 hours of the reporting of the incident, and assist[ ], as requested, with the investigation of such allegations.

It is undisputed that Angel never reported any facts regarding Distasio's sexual harassment allegations to the Human Resources Department.

In granting summary judgment for the defendant, the district court considered only the four allegations of sexual harassment known to Distasio's supervisor and held as a matter of law that they did not establish a hostile work environment under Title VII. The district court also held that the facts did not establish a prima facie case of retaliatory discharge. This appeal followed.

## DISCUSSION

### I. *Summary Judgment*

We review a grant of summary judgment *de novo. Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Summary judgment is properly granted only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). In assessing the record, "the non-movant will have his allegations taken as true," *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir.1996) (per curiam) (quotation marks omitted), and the district court must draw all factual inferences in favor of the non-moving party.

 Although we have recognized that summary judgment may be inappropriate in some sexual harassment cases where questions persist as to whether the conduct at issue amounts to sexual harassment, *see Gallagher v. Delaney*, 139 F.3d 338, 343–44, 1998 WL 119614, at *3 (2d Cir.1998), summary judgment under Rule 56 is still fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325–26, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be used "sparingly" when, as is often the case in sexual harassment claims, state of mind or intent are at issue. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). However, plaintiffs may not avoid summary judgment by simply declaring that state of mind is at issue. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) ("[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a

talisman to defeat an otherwise valid motion.") Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation, *id.*, and plaintiff must still offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. *Sexual Harassment Claim*

A plaintiff seeking relief against an employer for sexual harassment in the work place can proceed under two theories: quid pro quo harassment and a hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Distasio based her case only on the latter.

■ To prevail on a hostile work environment claim, a plaintiff who is harassed by a co-worker must show both (1) a hostile work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996) (citation omitted). An employer who has notice of a hostile work environment has a duty to take reasonable steps to eliminate it. *See Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995).

### A. *Hostile Work Environment*

■ To establish the first element—the existence of a hostile work environment—the plaintiff must show that his or her workplace was permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotation marks and citations omitted); *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399. Whether an environment is "hostile" or "abusive" depends on the totality of circumstances. *Harris*, 510 U.S. at 23, 114 S.Ct. 367. Courts must consider a variety of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating,

or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors must be evaluated from both a subjective and an objective viewpoint. *Id.* at 21–22, 114 S.Ct. 367.

■ The district court credited only the four instances of sexual harassment that Distasio's supervisor, Angel, was aware of, and found that collectively they were insufficiently severe to state a viable hostile work environment claim. The district court held that "the four reports [of harassment] at issue are inadequate to establish that there existed a 'hostile work environment' within the defendant's workplace"; "these four specific reported incidents, occurring over a period of four years, fail to establish a 'sufficiently severe' or 'pervasive and continuous' atmosphere of sexual harassment that 'alter the conditions of [the plaintiff's] employment.' " *Distasio*, No. 3:95–CV–323, at 2, 16. Distasio argues on appeal that the district court erred in basing its summary judgment decision "solely on four reported instances of harassment, instead of on the totality of the circumstances." We agree.

The district court failed to consider the three unreported incidents in which Santucci allegedly exposed himself to her when the two were alone at work, which occurred after Angel told Distasio not to complain further. The district court also ignored plaintiff's other claims, including Santucci's name-calling of a sexual nature, repeated sexual propositions, and unwanted touching. Finally, the district court failed to consider Distasio's allegations that other glass shop employees repeatedly taunted her and called her names.

■ Although the record is silent on the point, we assume that the district court declined to consider the allegations of unreported incidents of harassment precisely because they were not reported to Distasio's supervisor. However, the fact that the incidents were or were not reported is irrelevant to a determination of whether or not a hostile environment existed—the first element of plaintiff's claim. While a fact-finder at trial is free to make credibility determinations and may therefore disregard these unreported

incidents, at the summary judgment stage the district court must assume that all of plaintiff's allegations pertaining to the issue of a hostile work environment are true and give them no less weight than reported incidents. Thus, unreported incidents of harassment alleged by the plaintiff regarding the issue of hostile work environment, whether or not an explanation for the failure to report is proffered, stand on the same footing as reported incidents; both must be taken as true at the summary judgment stage.

Perkin Elmer cites *Donato v. Rockefeller Fin. Servs.*, No. 93 Civ. 4663(LLS), 1994 WL 495791, at *2 (S.D.N.Y. Sept.8, 1994), *Wilson v. Southern Nat'l*, 900 F.Supp. 803, 810 (W.D.N.C.1995), *aff'd*, 92 F.3d 1184, 1996 WL 445088 (4th Cir.1996), and *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 957 (N.D.Ga.1995), for the proposition that unreported instances of harassment should be ignored when considering the pervasiveness of the hostility of the workplace. However, these cases suggest only that the fact that a sexual harassment complaint is unreported may be relevant in considering whether an employer knew of the alleged conduct. Further, as discussed more fully below, the fact that incidents were not reported will not automatically shield an employer from Title VII liability. *See Meritor*, 477 U.S. at 72, 106 S.Ct. 2399.

At trial a fact-finder can decide what weight, if any, to give to unreported instances of sexual misbehavior. A jury could conclude that the reason such conduct was not reported was because it did not occur, or a jury could accept an explanation, likely to be advanced in Distasio's case, to the effect that the plaintiff's silence was prompted by her supervisor's admonition that her continued employment was dependent upon her silence.

■ In this case, the alleged unreported incidents—that on three separate occasions in 1993, Distasio's co-worker exposed his genitals to her—are plainly relevant to whether Distasio was subject to a hostile work environment. Moreover, when these incidents of highly offensive conduct are coupled with the incidents that Distasio did report, there is no reasonable basis for granting defendant's summary judgment motion on the issue of whether there was a hostile work environment.

**B.** *Imputation of Knowledge to the Employer*

Because the district court decided that summary judgment in favor of Perkin Elmer was appropriate on the hostile work environment issue, it never ruled on Perkin Elmer's argument that it was entitled to summary judgment on the basis that the hostile work environment could not be imputed to the company. We turn to that issue.

■ Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct "which created the hostile situation should be imputed to the employer." *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir.1992). When the harasser is a supervisor, the employer is presumed to be absolutely liable. *See Faragher v. City of Boca Raton,* — U.S. —, —, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."); *Burlington Indus. v. Ellerth,* — U.S. —, —, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998) (same). However, when the harassment is attributable to a co-worker, rather than a supervisor, as is the case here, the employer will be held liable only for its own negligence. *See Faragher,* — U.S. at —, 118 S.Ct. at 2290–92.

■ Therefore, Perkin Elmer will only be liable if Distasio can demonstrate that the company "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995). Under Title VII, an employer need not have actual knowledge of the harassment; an employer is considered to have notice of sexual harassment if the employer—or any of its agents or supervisory employees—knew or should have known of the conduct. *See Murray*, 57 F.3d at 249. The question of when an official's actual or constructive knowledge will be imputed to the employer is determined by

agency principles. *See Torres v. Pisano,* 116 F.3d 625, 636–37 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997). An official's knowledge will be imputed to an employer when:

> (A) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company; or (B) the official is charged with a duty to act on the knowledge and stop the harassment; or (C) the official is charged with a duty to inform the company of the harassment.

*Id.* at 636–37 (citations omitted).

■ Taking the facts in plaintiff's favor, a reasonable jury would have to conclude that Perkin Elmer is charged with knowledge of the sexual harassment incidents that Distasio reported to Angel. Perkin Elmer's own sexual harassment policy specifically states that "an employer is considered to have direct knowledge when an employee has complained directly to a supervisor, or Human Resources or has used any established complaint mechanism." Because, under the company's policy, Perkin Elmer is "considered to have direct knowledge" of the complaint once an employee complains to one of the named people in the policy, we conclude that Angel's knowledge must be imputed to Perkin Elmer as a matter of law.

■ Angel's knowledge is also imputed to Perkin Elmer on an independent ground, namely that he had a responsibility to relay sexual harassment complaints to the company under the express policy promulgated by the company. *See* RESTATEMENT (SECOND) OF AGENCY § 275 (1958) ("the principal is affected by the knowledge which an agent has a duty to disclose to the principal or to another agent of the principal to the same extent as if the principal had the information"). An employer will be liable based on the knowledge of an employee, who may or may not have management authority, if that employee "has an official or strong *de facto* duty to act as a conduit to management for complaints about work conditions," *Torres,* 116 F.3d at 637 (quoting *Lamb v. Household Credit Servs.,* 956 F.Supp. 1511, 1517 (N.D.Cal.1997)), or is responsible for relaying harassment complaints to the corporate hierarchy. The Per-

kin Elmer company policy directs supervisors, after receiving a harassment complaint, to:

> [i]nform[ ] the Human Resources Department of allegations of sexual harassment by employees or non-employees within 24 hours of the reporting of the incident, and assist[ ], as requested, with the investigation of such allegations.

In light of this policy, requiring Angel to inform the company of reported harassment that came to his attention, Perkin Elmer is charged with knowledge of the harassment to the same extent as Angel. *See Torres,* 116 F.3d at 637.

■ Perkin Elmer asserts that it cannot be held liable for those acts of harassment that were not reported to Angel. We disagree, although Distasio's case is weaker as to these unreported claims. While the fact that a complaint was unreported may be relevant in considering whether an employer had knowledge of the alleged conduct, an employer is not necessarily insulated from Title VII liability simply because a plaintiff does not invoke her employer's internal grievance procedure if the failure to report is attributable to the conduct of the employer or its agent. *See, e.g., Meritor,* 477 U.S. at 72, 106 S.Ct. 2399; *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1180–81 (2d Cir.1996).

There was sufficient evidence in the record from which a reasonable jury could find that Distasio's failure to report the incidents of harassment was caused by Angel, Perkin Elmer's agent. Taking Distasio's allegations as true, as we must at the summary judgment stage, she was silent about Santucci's later conduct because Angel told her "[i]f you say something, you can't work here no more." Of course, at trial, a jury may disbelieve Distasio and find that Angel never made the remark, or that, even if the remark was made, that Distasio was only being prohibited from telling others, but not Angel, and that she must have understood that. On the other hand, the jury could find that Distasio, whose English was imperfect, believed that she would lose her job if she reported further incidents to Angel and that Angel reasonably should have known that his words would

have that result. If the jury finds that Angel silenced Distasio in this manner and conditioned her employment on that silence, then any unreported incidents that occurred must be imputed to Perkin Elmer. Perkin Elmer may be liable for these unreported incidents.

In sum, whether or not knowledge of the unreported incidents of sexual harassment can be imputed to Perkin Elmer is ultimately a jury question. Just as the evidence of the unreported incidents of harassment must be considered by the jury on the issue of a hostile work environment, the circumstances surrounding the failure to report those incidents must also go to the jury on the question of whether liability for them can be imputed to Perkin Elmer.

## C. *Whether Perkin Elmer's Response Was Reasonable*

■■■■ An employer that has knowledge of a hostile work environment has a duty to take reasonable steps to remedy it. *See Murray*, 57 F.3d at 249 (hostile work environment); *Snell v. Suffolk County*, 782 F.2d 1094, 1104 (2d Cir.1986) (hostile racial environment). Therefore, even if Perkin Elmer had knowledge of the hostile work environment, liability will not attach unless the company failed to take reasonable steps to eliminate the harassment. Whether the company's response was reasonable has to be assessed from the totality of circumstances. Factors to be considered in this analysis are the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment. *See id.*

■■■■ In this case, it is undisputed that Angel's only response to Distasio's complaints was to speak with Santucci. He did not follow company policy that required him to report Distasio's complaints to Human Resources. This failure to comply with the company's own reporting requirements is evidence tending to show that the company's response was inadequate.

■■■■ On the other hand, the plaintiff's failure to report to other company personnel the incidents of harassment that she report-ed to Angel is irrelevant to the adequacy of Perkin Elmer's response. Perkin Elmer argues that a harassed plaintiff has other options under its policy because the misconduct may be reported not only to the employee's "department supervisor," but also to her "manager, Human Resources representative, or to the Corporate Equal Employment Opportunity Manager." Implicit in this argument is the notion that the plaintiff has an affirmative duty to bring her allegations to the company's attention in more than one way when she believes the company's response to her harassment claim is inadequate. We reject this attempt to shift the company's failure to respond onto the plaintiff's shoulders. When a plaintiff reports harassing misconduct in accordance with company policy, she is under no duty to report it a second time before the company is charged with knowledge of it.

To recap, Santucci's misconduct, to the extent that Distasio followed company policy in reporting to Angel, must be imputed to Perkin Elmer. Unreported conduct, if it occurred, may be imputed to Perkin Elmer if the jury concludes that the failure to report was reasonably caused by a command from Distasio's supervisor to keep silent. The reasonableness of the company's response must be assessed by the jury based on the totality of circumstances. However, it is not relevant to that assessment that Distasio did not report to others the misconduct that she had already reported to her supervisor.

Because the district court made no factual findings as to whether or not Santucci's conduct could be imputed to Perkin Elmer and incorrectly assumed that Perkin Elmer could only be liable for the incidents Distasio reported to Angel, we vacate that portion of the district court's judgment and remand for further proceedings consistent with this opinion.

## III. *Wrongful Discharge*

■■■■ Retaliatory discharge in violation of Title VII occurs when a " 'retaliatory motive plays a part in [the discharge], ... whether or not it was the sole cause ... [or] when an employer is motivated by retaliatory animus, even if valid objective reasons for

the discharge exist.' " *Reed,* 95 F.3d at 1177–78 (alterations in original) (quoting *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993)). To establish a prima facie case for retaliation a plaintiff must demonstrate that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* at 1178.

■ The district court found that the complaint failed to allege a causal connection between the alleged protected activity and an unfavorable employment action and that Distasio's termination was the direct and proximate result of her striking a co-worker, and therefore granted summary judgment in favor of the defendant on her retaliation claim. Distasio does not challenge the district court's findings regarding her retaliation claim in her appellate brief. We find that Distasio has abandoned this claim; the district court's findings regarding her retaliation claim are conclusive. *See Anderson v. Branen,* 27 F.3d 29, 30 (2d Cir.1994) (per curiam) (argument which is not raised on appeal is deemed abandoned).

## CONCLUSION

Accordingly, the district court's grant of summary judgment to Perkin Elmer on the ground that there was no hostile work environment is vacated and the case remanded for further proceedings. The district court's grant of summary judgment in favor of Perkin Elmer on Distasio's retaliation claim is affirmed.

REAL, District Judge, dissenting.

I dissent. I believe that *Burlington Indus. v. Ellerth,* — U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* — U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), overlaid on *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), are decisive here. I

would affirm the judgment of the district court.