ELMORE, Judge.
 

 *674
 
 Rashia Norman ("plaintiff") appeals from an order granting summary judgment in favor of the North Carolina Department of Administration ("defendant" or "NCDOA") on plaintiff's Title VII employment discrimination and retaliation claims. On appeal, plaintiff argues that she has demonstrated at least two genuine issues of material fact, and that the trial court should not have granted summary judgment on any of her claims. After careful review, we disagree and hold that the trial court did not err in granting summary judgment in favor of defendant. Accordingly, we affirm the order of the trial court.
 

 I. Background
 

 On 23 February 2010, plaintiff began probationary employment as a parking booth attendant with the State Parking Division of the NCDOA. Plaintiff's immediate supervisor at the NCDOA was Mr. Derrick Moore, a parking operations manager. However, Mr. Moore was on family medical leave from 4 March 2010 until 1 June 2010, during which time plaintiff
 
 *675
 
 was supervised by Ms. Catherine Reeve, a state parking director. Plaintiff read and signed the NCDOA's unlawful workplace harassment policy on 10 March 2010.
 

 While under Ms. Reeve's supervision, plaintiff left her booth unattended on more than one occasion, and she had to be counseled by Ms. Reeve regarding the importance of remaining at her assigned post. Because plaintiff was still in the learning stages of her probationary employment, no formal disciplinary measures were taken against her at that time.
 

 Mr. Moore returned to work in June 2010. According to plaintiff, between late June and July 2010, Mr. Moore made multiple inappropriate comments of a sexual nature toward plaintiff. For example, Mr. Moore told plaintiff that he liked how she walked and twisted her hips; that she had a "big butt" and "don't let nothing out"; and that he liked a woman "with meat on her bones." Additionally, over the course of several days in July 2010, Mr. Moore pulled on plaintiff's bag and arm, touched her hair, held her hand, and asked her to eat lunch with him in his office; plaintiff declined Mr. Moore's request and told him to stop his inappropriate behavior. On one occasion, when plaintiff told Mr. Moore that she needed booth supplies, Mr. Moore responded in a low, breathy voice, "What else do you need?" Mr. Moore also told plaintiff that "his good word" would get her a promotion.
 

 In late July 2010, plaintiff told a co-worker about Mr. Moore's behavior, which the co-worker then relayed to Mr. Moore. Mr. Moore telephoned plaintiff at her booth and asked her why she treated him "like a stepchild" before he ultimately apologized for making her feel uncomfortable. At that time, plaintiff did not suspect Mr. Moore of attempting to have her dismissed, and she did not report his behavior to NCDOA management or personnel. Mr. Moore did not make further comments of a sexual nature to plaintiff, nor did he touch her, at any point after July 2010.
 

 *181
 
 On 18 August 2010, plaintiff failed to properly log off from her fee computer, which caused two days of transactions to be included in the daily transaction report for 19 August 2010. Ms. Reeve summoned plaintiff to her office, where Mr. Moore was also present, and counseled her regarding the importance of logging off properly. In September 2010, plaintiff submitted a certificate of return to work form signed by her healthcare provider in which she admitted altering the date, and Ms. Reeve and Mr. Moore again counseled plaintiff regarding her work performance.
 

 *676
 
 Plaintiff received a pre-disciplinary conference letter on 20 September 2010 indicating that she was being considered for dismissal. The letter set forth the specific reasons for dismissal as follows: (1) plaintiff's failure to communicate with her supervisor regarding the time needed for necessary appointments and repeatedly leaving the parking division without sufficient time to secure replacement personnel; (2) plaintiff's altering a certificate of return to work form; and (3) plaintiff's failure to follow defined work procedures by failing to log off her fee computer. The letter also informed plaintiff that a conference would be conducted by Ms. Reeve on 22 September 2010.
 

 Both Ms. Reeve and Mr. Moore were present at plaintiff's pre-disciplinary conference. At the end of the meeting, Ms. Reeve asked plaintiff if she had any questions, and plaintiff responded by telling Ms. Reeve that Mr. Moore had been sexually harassing her. This was the first time that plaintiff had lodged a complaint against Mr. Moore with NCDOA management, and Ms. Reeve immediately reported the allegations to the human resources office. The Office of State Personnel subsequently conducted an investigation into the report and determined there was no sexual harassment or retaliation.
 

 With the approval of the human resources office, Ms. Reeve made the ultimate decision to dismiss plaintiff from probationary employment on 23 September 2010. On 28 September 2010, plaintiff filed charges against the NCDOA with the Equal Employment Opportunity Commission ("EEOC") in which she alleged a violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e,
 
 et seq
 
 . ("Title VII"). Plaintiff received a right-to-sue letter from the EEOC on 3 February 2012 and filed an amended complaint against the NCDOA in Wake County Superior Court on 2 April 2015.
 
 [1]
 
 In her complaint, plaintiff alleged three claims in violation of Title VII as follows: (1) sexual harassment creating a hostile work environment, (2) sex discrimination resulting in
 
 quid pro quo
 
 harassment, and (3) sex discrimination resulting in retaliatory discharge.
 

 On 3 March 2016, defendant filed a motion for summary judgment as to all of plaintiff's claims. The trial court held a hearing on the motion on 24 May 2016 and granted summary judgment in favor of defendant by order entered 21 December 2016. In its order, the court made three
 
 *677
 
 dispositive findings of fact, citing plaintiff's own deposition as evidence of each finding.
 

 The Plaintiff did not report supervisor Derrick Moore's alleged illegal behavior to Defendant agency's management until the September 22, 2010 pre-dismissal conference. [Plaintiff's Deposition, p. 35, lines 23-25, p. 36, lines 1-4] The Plaintiff did not report alleged illegal behavior to Defendant agency's personnel office until "days after the conference" [Plaintiff's Deposition, p. 36, lines 5-7] and Plaintiff did confirm the occurrence of events which were cited as legitimate non-discriminatory reasons given for her dismissal. [Plaintiff's Deposition, pp. 27-28, 29-30, 32-33]
 

 The court then concluded "there is no genuine issue as to any material fact in the [p]laintiff's claims" and that "[d]efendant is therefore entitled to judgment as a matter of law." Plaintiff entered timely notice of appeal.
 

 II. Discussion
 

 On appeal, plaintiff argues that the trial court erred in granting summary judgment in favor of defendant because genuine issues
 
 *182
 
 of material fact exist regarding whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the NCDOA, and whether the legitimate, non-discriminatory reasons given for plaintiff's dismissal were mere pretext.
 

 Defendant contends that summary judgment was proper because plaintiff cannot impute the alleged misconduct to the NCDOA, and because plaintiff cannot establish a causal connection between the alleged misconduct, or between her complaint regarding the alleged misconduct, and her dismissal.
 

 Because plaintiff has failed to forecast sufficient evidence of each essential element of her three claims, we hold that summary judgment was proper.
 

 A.
 
 Standard of Review
 

 Summary judgment is appropriate when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). The party moving for summary judgment bears the initial burden of proof, which may be met "(1) by
 
 *678
 
 showing an essential element of the opposing party's claim is nonexistent or cannot be proven, or (2) by showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim."
 
 Belcher v. Fleetwood Enters., Inc.
 
 ,
 
 162 N.C. App. 80
 
 , 84,
 
 590 S.E.2d 15
 
 , 18 (2004).
 

 Upon a forecast of evidence tending to support the motion for summary judgment, the burden shifts to the non-moving party to likewise "produce a forecast of evidence demonstrating that [she] will be able to make out at least a prima facie case at trial."
 
 Collingwood v. Gen. Electric Real Estate Equities, Inc.
 
 ,
 
 324 N.C. 63
 
 , 66,
 
 376 S.E.2d 425
 
 (1989) (citation omitted). The non-moving party survives the motion not by "rest[ing] upon the mere allegations" of her pleading, N.C. Gen. Stat. § 1A-1, Rule 56(e) (2015) ; rather, she "must come forward with specific facts showing a genuine issue for trial."
 
 Beaver v. Hancock
 
 ,
 
 72 N.C. App. 306
 
 , 310,
 
 324 S.E.2d 294
 
 , 298 (1985) (citation omitted). In evaluating a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party, and all inferences of fact must be drawn in her favor.
 
 In re Estate of Redding v. Welborn
 
 ,
 
 170 N.C. App. 324
 
 , 329,
 
 612 S.E.2d 664
 
 , 668 (2005). "Our standard of review of an appeal from summary judgment is
 
 de novo
 
 [.]"
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008).
 

 B.
 
 Sexual Harassment under Title VII
 

 Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[.]" 42 U.S.C. § 2000e-2(a)(1). Sexual harassment, which includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, "is a form of sex discrimination prohibited by Title VII."
 
 Meritor Sav. Bank, FSB v. Vinson
 
 ,
 
 477 U.S. 57
 
 , 65,
 
 106 S.Ct. 2399
 
 , 2404,
 
 91 L.Ed. 2d 49
 
 (1986). For analytical purposes, employment discrimination in the form of sexual harassment is often categorized into two varieties: harassment that creates an offensive or "hostile" work environment, and
 
 quid pro quo
 
 harassment, where sexual consideration is demanded in exchange for job benefits.
 
 Katz v. Dole
 
 ,
 
 709 F.2d 251
 
 , 254 (4th Cir. 1983). Here, plaintiff alleges that defendant subjected her to both varieties of sexual harassment by its employee supervisor, Mr. Moore.
 

 i.
 
 Hostile Work Environment
 

 Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause
 
 *679
 
 of action" in favor of individuals forced to work in a hostile workplace.
 
 EEOC v. R&R Ventures
 
 ,
 
 244 F.3d 334
 
 , 338 (4th Cir. 2001).
 

 To establish a hostile work environment based on sexual harassment under [Title VII], a plaintiff-employee must prove that
 
 *183
 
 (1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.
 

 Crockett v. Mission Hosp., Inc.
 
 ,
 
 717 F.3d 348
 
 , 354 (4th Cir. 2013) (citation omitted). As to the fourth element, an employer may "avoid strictly liability for a supervisor's sexual harassment of an employee if no tangible employment action was taken against the employee" in connection with the unwelcome conduct.
 
 Matvia v. Bald Head Island Mgmt., Inc.
 
 ,
 
 259 F.3d 261
 
 , 266 (4th Cir. 2001). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."
 
 Burlington Indus., Inc. v. Ellerth
 
 ,
 
 524 U.S. 742
 
 , 761,
 
 118 S.Ct. 2257
 
 , 2268,
 
 141 L.Ed. 2d. 633
 
 (1998). If no such action was taken against the employee in relation to the misconduct, the employer has an affirmative defense to vicarious liability if (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."
 
 Matvia
 
 ,
 
 259 F.3d at 266-67
 
 (citations omitted).
 

 In regard to her hostile work environment claim, plaintiff does not assert that she suffered a tangible employment action in connection with Mr. Moore's conduct, nor does she argue that defendant failed to exercise reasonable care to deter harassment in the workplace. Rather, plaintiff contends that a dispute of fact exists as to the second element of the employer-liability defense: that is, whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the NCDOA.
 

 "If Title VII's prohibitions against sexual harassment are to be effective, employees must report improper behavior to company officials."
 

 Id.
 

 at 269
 
 (citation omitted). Thus, "evidence that the plaintiff failed to utilize the [employer's] complaint procedure will normally suffice to satisfy [the employer's] burden under the second element of the defense."
 

 Id.
 

 (citation and internal quotation marks omitted). Here, however, plaintiff claims to have feared retaliation from Mr. Moore had she complained
 
 *680
 
 to defendant about his conduct. Plaintiff cites two cases-one from the Fifth Circuit Court of Appeals and one from the Second Circuit-for the proposition that under such circumstances, an employee's decision not to report sexual harassment can be reasonable.
 

 In
 
 Mota v. Univ. of Tex. Houston Health Sci. Ctr.
 
 ,
 
 261 F.3d 512
 
 (5th Cir. 2001), the plaintiff was a visiting professor from a foreign country who was sexually harassed by his supervisor. The supervisor told the plaintiff that the university would defend the supervisor against any type of harassment complaint, that it had done so in the past, and that the supervisor had previously helped remove from the university certain people whom he disliked, suggesting further that the plaintiff's immigration status could be jeopardized if he no longer worked at the university.
 

 Id.
 

 at 516
 
 . The court in
 
 Mota
 
 concluded that a rational jury could infer that the plaintiff's failure to take advantage of available remedies was not unreasonable given the supervisor's "repeated threats of retaliation" and "influence at the [u]niversity."
 

 Id.
 

 at 525-26
 
 .
 

 In
 
 Distasio v. Perkin Elmer Corp.
 
 ,
 
 157 F.3d 55
 
 (2nd Cir. 1998), the plaintiff was harassed by a co-worker and reported the conduct to her immediate supervisor. The supervisor first told the plaintiff she was crazy, then warned her not to report further conduct or she would lose her job.
 

 Id.
 

 at 59-60
 
 . As in
 
 Mota
 
 , the court in
 
 Distasio
 
 concluded that "the jury could find that [the plaintiff] ... believed that she would lose her job if she reported further incidents to [the supervisor]" such that the plaintiff's failure to report was not unreasonable.
 

 Id.
 

 at 64-65
 
 .
 

 The present case is readily distinguishable from both
 
 Mota
 
 and
 
 Distasio
 
 . Here, there is no evidence whatsoever that Mr. Moore ever threatened plaintiff such that she could reasonably have feared retaliation for reporting
 
 *184
 
 his conduct to management. Taking plaintiff's allegations as true, the harassment began in June 2010 and ended in July 2010, but plaintiff did not even begin to suspect Mr. Moore of attempting to have her dismissed until late August or September 2010.
 

 Plaintiff was aware of the NCDOA's sexual harassment policy, yet she failed to take advantage of corrective opportunities provided by her employer. No rational jury could infer that this failure was reasonable due to fear of retaliation, as there is no evidence that Mr. Moore threatened to retaliate against plaintiff, either for denying his unwelcome advances or for reporting his conduct to management. Thus, plaintiff cannot impute the alleged misconduct to her employer-an essential element of her hostile work environment claim-and the trial court did not err in granting summary judgment as to that claim.
 

 *681
 
 ii. Quid Pro Quo
 
 Harassment
 

 The second form of Title VII sex discrimination, known as
 
 quid pro quo
 
 sexual harassment, can be established by a five-element prima facie case as follows:
 

 1. The employee belongs to a protected group.
 

 2. The employee was subject to unwelcome sexual harassment.
 

 3. The harassment complained of was based upon sex.
 

 4. The employee's reaction to the harassment affected tangible aspects of [her] compensation, terms, conditions, or privileges of employment.
 
 The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability
 
 . Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
 

 5. The employer ... knew or should have known of the sexual harassment and took no effective remedial action.
 

 Spencer v. Gen. Electric Co.
 
 ,
 
 894 F.2d 651
 
 , 658 (4th Cir. 1990) (citations omitted) (emphasis added).
 

 In order to satisfy the fourth element of her
 
 quid pro quo
 
 claim, plaintiff must show that her reaction to the harassment-that is, her acceptance or rejection of Mr. Moore's sexual advances-was an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment. To that end, plaintiff asserts that Mr. Moore attempted to influence her to accept his sexual advances by telling plaintiff that the only thing between plaintiff getting an office job (
 
 i.e.
 
 a job benefit) was "his good word." Plaintiff also contends that her dismissal constitutes a tangible job detriment for purposes of her
 
 quid pro quo
 
 claim. We disagree.
 

 "An insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because the 'victim' of the remark happens to belong to a class protected by Title VII."
 
 Hartsell v. Duplex Products, Inc.
 
 ,
 
 123 F.3d 766
 
 , 772 (4th Cir. 1997). While plaintiff claims on appeal to have interpreted Mr. Moore's "good word" comment as an attempt to influence her to reciprocate his conduct, there is no
 
 *682
 
 indication that the comment was sexual in nature, and it appears to be a reflection of plaintiff's status as a probationary employee rather than her gender. Similarly, plaintiff has not demonstrated a causal connection between her rejection of Mr. Moore's advances in June and July 2010 and her September 2010 dismissal, for which defendant offered legitimate, non-discriminatory reasons that have not been refuted.
 

 Because plaintiff has failed to establish that her reaction to Mr. Moore's harassment affected a tangible aspect of her employment, the trial court did not err in granting summary judgment on plaintiff's
 
 quid pro quo
 
 claim.
 

 C.
 
 Retaliation under Title VII
 

 In addition to making certain employment practices themselves unlawful, Title VII also makes it unlawful for an employer "to discriminate against any of [its]
 

 *185
 
 employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a). Unlike plaintiff's
 
 quid pro quo
 
 claim, which includes an element of retaliation resulting from her refusal to acquiesce to her supervisor's sexual advances, the form of retaliation prohibited by this subsection refers to retaliation in response to an employee's engagement in a protected activity, such as reporting the unlawful conduct. Here, plaintiff alleges that defendant terminated her employment in retaliation for her complaint regarding the alleged sexual harassment by her supervisor, Mr. Moore.
 

 [A] prima facie showing of retaliatory discharge requires a plaintiff to show: (1) [s]he engaged in some protected activity, such as filing an EEO[C] complaint; (2) the employer took adverse employment action against plaintiff; and (3) that the protected conduct was a substantial or motivating factor in the adverse action (a causal connection existed between the protected activity and the adverse action).
 

 Emp't Sec. Comm'n of N.C. v. Peace
 
 ,
 
 128 N.C. App. 1
 
 , 9,
 
 493 S.E.2d 466
 
 , 471 (1997). As to the third element, "Title VII retaliation claims must be prove[n] according to traditional principles of but-for causation .... This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."
 
 Univ. of Tex. Sw. Med. Ctr. v. Nassar
 
 ,
 
 570 U.S. 338
 
 , ----,
 
 133 S.Ct. 2517
 
 , 2533,
 
 186 L.Ed. 2d. 503
 
 (2013). If the plaintiff establishes a prima facie case of retaliation, the defendant may rebut the showing with proof of a legitimate, non-discriminatory reason for the adverse action.
 
 Beall v. Abbott Labs.
 
 ,
 
 130 F.3d 614
 
 , 619 (4th Cir. 1997). The burden then shifts
 
 *683
 
 back to the plaintiff to demonstrate that the reason given by the defendant is mere pretext by showing "that the reason was false,
 
 and
 
 that discrimination was the real reason for the challenged conduct."
 

 Id.
 

 (citation and internal quotation marks omitted).
 

 Plaintiff argues that the trial court erred in dismissing her retaliation claim because a genuine issue of material fact exists as to whether the reasons given by defendant for her dismissal were mere pretext. However, plaintiff cannot prove the third essential element of this claim and has, therefore, failed to meet her initial burden of establishing a prima facie case of retaliatory discharge.
 

 In her deposition, plaintiff admitted that she did not report the alleged unlawful conduct to NCDOA management until her pre-dismissal conference, and she did not report the conduct to the NCDOA personnel office until several days after the conference. Because plaintiff did not engage in a protected activity at any time prior to the exact moment in which adverse employment action was being taken against her, plaintiff's reporting of the misconduct could not possibly have been a substantial or motivating factor in her dismissal. Even assuming,
 
 arguendo
 
 , that plaintiff has established a prima facie case of retaliation, she nevertheless confirmed the existence of legitimate, non-discriminatory reasons for her dismissal. Thus, the trial court did not err in granting summary judgment on plaintiff's Title VII retaliation claim.
 

 III. Conclusion
 

 Because plaintiff has failed to forecast sufficient evidence of each essential element of her Title VII employment discrimination and retaliation claims, we hold that summary judgment was proper. The order of the trial court is hereby:
 

 AFFIRMED.
 

 Judges STROUD and TYSON concur.
 

 [1]
 

 Plaintiff filed her initial complaint, Wake County no. 12 CVS 6303, on 2 May 2012. Plaintiff voluntarily dismissed her complaint without prejudice on 3 April 2014, and she filed her amended complaint within the one-year period permitted by N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (2015).