**Jamillah HILL, Plaintiff,**

v.

**THE CHILDREN'S VILLAGE,**
**Defendant.**

No. 00 CIV. 9477(CM)(LMS).

United States District Court,
S.D. New York.

April 2, 2002.

Gail I. Auster, Law Offices of Gail I. Auster and Assoc., PC, White Plains, NY, Lisa R. Lipman, New Rochelle, NY, for plaintiffs.

Felice B. Ekelman, John A. Snyder, Jackson, Lewis, Schnitzler & Krupman, New York, NY, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IN PART

McMAHON, District Judge.

Plaintiff, Jamillah Hill ("Hill") sues The Children's Village for violations of federal and state anti-discrimination laws. The Children's Village is a non-profit organization providing residential and other treatment facilities for emotionally disturbed boys. Hill worked as a sociotherapist there and was assigned to Brooks Cottage from approximately April 1998 through April 2000. Hill reported to Reverend Curtis Brown ("Brown") during the period that she was employed at Brooks Cottage.

Hill claims that she was discriminated against by The Children's Village on the basis of her sex because she was sexually

harassed by her supervisor, Brown, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* Plaintiff proceeds on both *quid pro quo* and hostile work environment theories of sexual harassment.[1]

The Children's Village now moves for summary judgment under Federal Rule of Civil Procedure 56.

## FACTUAL BACKGROUND

Hill began her employment with The Children's Village in April 1998. (Compl.¶ 11.) Brown became Hill's supervisor when she was assigned to Brooks Cottage. (Compl.¶ 15.) Hill reported to Brown from approximately April 1998 to April 2000. (Brown tr. at 65.) Brown had control over Hill's schedule and her performance evaluations. Brown reported to Sylvie Jeanloz ("Jeanloz"), the Unit Director. (Jeanloz tr. at 29, 33)

During the time that she worked for The Children's Village, Hill was given overall employment reviews of very good (Pl's Opp'n to Def.'s Mot. for Summ. J., Exh. 13) and good (*Id.* at Exh. 14). Hill was given a written warning in August 1999 regarding her inability to work with other members of the Brooks team. (Hill tr. at 143, Ekelman Aff., Exhs. B and J.)

Plaintiff asserts that Brown sexually harassed her while he was her supervisor at The Children's Village. Plaintiff states that Brown told her that she had a "sexy" body and he "hoped" she was not going to "let that sexy body go to waste." (Hill tr. at 183.) Brown told Plaintiff he could fulfill her "sexual needs" because he was "an older man" (Hill tr. at 184–85; Earl tr. at 65, 135–38.) Plaintiff also alleges that Brown rubbed up against her inappropriately and rubbed and massaged her shoulders. (Hill tr. at 181, 189, 243–44.) Hill claims that she tried to show Brown that his advances were unwelcome by wearing big, baggy clothes to work. Brown responded to this by asking her "What are you doing in that? What are you covering up?" (Earl. tr. at 129; Brown tr. at 124, 127.) Hill's co-worker, Angela Earl ("Earl") testified in her deposition that Brown repeatedly told Hill that "she looked good" (Earl tr. at 73). Earl testified that she thought "he was sexually harassing [Hill] with words." (*Id.* at 73–75.)

When Plaintiff worked under Brown's supervision at Brooks Cottage, she had some morning shifts and the Thursday evening shift, and she had Fridays and Saturdays off. This was a very desirable schedule. (*Id.* at 145.) Hill contends that because she rejected Brown's advances, he took away her shift and gave it to Earl. (*Id.* at 147.)

Plaintiff asserts that Brown was jealous of the attention she received from other males. Brown repeatedly questioned her about her relationship with Trae Cooper, for example. (Hill tr. at 192, 259–60.) Brown testified that he told Plaintiff Coo-

---

1. Plaintiff does not explicitly assert that she is proceeding under a theory of *quid pro quo* harassment, but she does argue that Brown took tangible employment actions against her. Plaintiff's brief correctly notes that the Supreme Court has stated that the terms *"quid pro quo"* and *"hostile environment"* are of limited utility. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 743, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). However, they still serve as a convenient shorthand for distinguishing cases where threats are carried out from those where they are not. *Id.* Since there is a significant practical difference between the two theories in terms of liability, I will use the terms *"quid pro quo"* and *"hostile work environment"* to distinguish the claims in this opinion. *See e.g., Frank v. Plaza Const. Corp.,* 186 F.Supp.2d 420, 427–28 (S.D.N.Y.2002); *DeWitt v. Lieberman,* 48 F.Supp.2d 280, 288 n. 6 (S.D.N.Y.1999).

per was just a young, immature boy and asked her whether she was seeing or dating Cooper. (Brown tr. at 207.) Brown also asked her about other men. (Hill tr. at 120.)

In March 2000, Hill learned that Astra Rodriguez, a mother of one of the boys at the cottage told Michelle Reilly–MacKessy, a social worker at Brooks Cottage, that she had seen Hill kissing a male co-worker in Brooks Cottage. (Reilly–MacKessy tr. at 11–12, 20–27; Ekelman Aff., Exh. G.) Rodriguez prepared a written statement describing what she saw. (Reilly–MacKessy tr. at 23–24; Ekelman Aff., Exh. G.) Brown investigated the parent's complaint. During the investigation, Hill's schedule was changed to ensure that Hill and the man she was suspected of kissing (Trae Cooper) were not working together on parent visiting day. (Brown tr. at 180, 212–14; Ekelman Aff., Exh. C.) Trae Cooper was terminated following the investigation of the complaint. (Alford tr. at 128–29; Ekelman Aff., Exh. D.) Brown never reached a conclusion as to what happened in the conference room on the day of the alleged kissing incident. (Brown tr. at 184.)

On April 4, 2000 Hill was terminated from her employment with The Children's Village. On that day, Brown recommended to Jeanloz that Hill be fired. (Brown tr. at 236–37.) Jeanloz then told Lawrence Alford ("Alford"), Vice President of Human Resources that Hill should be terminated. (Alford tr. at 121.) Alford spoke with Brown and asked him if he supported the termination. (*Id.*; Brown tr. at 242–42.) Brown said that he did support the termination, but did not explain his reasons. (Alford tr. at 121; Brown tr. at 242–42.) Alford accepted Brown's recommendation to terminate Hill. He then wrote a memorandum of termination. (Alford tr. at 119.) Brown signed this memorandum, and told Plain-

tiff that she was fired. (Brown tr. at 244–45; Hill tr. at 227–28.) Plaintiff asserts that the decision to terminate her was not made until Brown approved the decision. Defendant responds that Plaintiff was terminated following the incident with Trae Cooper and because of her inability to work closely with co-workers. Plaintiff replies that these reasons are merely a pretext.

The Children's Village's written sexual harassment policy is set forth in the Children's Village's Employee Handbook and Policies and Procedures Manual for management personnel. (Alford tr. at 41–42, 47–48; Ekelman Aff., Exhs. D and H.) Shortly after Plaintiff began her employment with The Children's Village, she signed a form acknowledging that she had received an Employee Handbook. (Hill tr. at 53; Ekelman Aff., Exhs. B and I.) Hill asserts that she was told to sign the form acknowledging receipt of the handbook because personnel would be giving her one soon, but they never followed up on their promise. (Hill tr. at 65–66.) Plaintiff stated in her deposition that she did not receive a copy of the handbook after she was terminated (when she requested one). (Hill tr. at 51.)

Defendant claims that Hill never complained about the alleged sexual harassment by Brown until after she was terminated. (Hill tr. at 220.) Plaintiff, however, contends that she complained to Albert Lovelle ("Lovelle"), a supervisor in another cottage, about Brown's sexual harassment over a year before she was fired. (Hill tr. at 54–58.) Lovelle did not report what Plaintiff told him because he felt that the fact that she told him outside of work meant that he did not have an obligation to report it. (Alford tr. at 169.) Lovelle eventually told Hill that he should go to Alford, Vice President of Human Resources, to tell

him about Brown's behavior. (Lovelle tr. at 65–67.) Plaintiff made appointments to speak with Alford, but Alford did not show up for the appointments; instead he rescheduled them. (Hill tr. at 220.) Alford then told Brown about Hill's appointment to see him and asked Brown if he knew why Plaintiff wanted to talk to him. (Alford tr. at 102–05; Brown tr. at 245.) Hill was terminated shortly after making these appointments to speak with Alford.

Alford investigated Hill's complaint by interviewing several employees including Hill, Brown, Sylvie Jeanloz, Trae Cooper, Albert Lovelle, and Angela Earl. (Hill tr. at 226; Alford tr. at 144–46, 148–49, 158–64, 167–68, 172–74; Brown tr. at 309.) At the end of the investigation, Alford determined that there was no evidence to substantiate Plaintiff's claims of sexual harassment. (Alford tr. at 160, Ekelman Aff., Exhs. N and O.) Alford determined that Brown and Hill engaged in inappropriate conduct because Brown had driven Hill to a family wake and to a court appearance during working hours. (Alford tr. at 161–64.)

On May 4, 2000, The Children's Village reinstated Plaintiff with full back pay, assigned her to a different cottage and supervisor and assigned her to the shift she requested. (Ekelman Aff., Exh. O.) Her reinstatement was accompanied by a written disciplinary warning. (Pl's Opp'n to Def.'s Mot. for Summ. J., Exh. 22.) Brown was issued a disciplinary notice, and was suspended for ten days without pay. (Alford tr. at 162; Ekelman Aff., Exh. N.)

Plaintiff claims that The Children's Village's policy regarding sexual harassment is inadequately implemented. In support of this charge, Plaintiff notes that Alford, who has the sole responsibility for implementing the policy, has very little training in this area. Plaintiff also questions Alford's understanding of the policy, since he stated at his deposition that many of Brown's actions (such as telling Hill she needed to have her sexual needs met, stating that she needed a man like him to fulfill her sexual needs, rubbing her leg with his hand, or telling her that she has a sexy body and shouldn't let it go to waste) do not (or might not) constitute sexual harassment. (Alford tr. at 61, 62, 66, 68.) Plaintiff also asserts that Alford did not conduct an adequate investigation because he did not take notes of his interviews, he did not prepare questions in advance of the interviews, and did not ask any witnesses to swear to the accuracy of their statements. Plaintiff claims that Lovelle's failure to report the harassment that Hill reported to him was a serious infraction of the sexual harassment policy that Alford also should have addressed. (Alford tr. at 169–70.)

Defendant asks for summary judgment on the Title VII claims for the following reasons: (1) there is no genuine issue of material fact; (2) Defendant took prompt, remedial action to investigate and address plaintiff's claims of sexual harassment; and (3) Defendant exercised reasonable care to prevent and correct any alleged inappropriate conduct and Plaintiff unreasonably failed to utilize Defendant's sexual harassment complaint procedure. Defendant also argues that summary judgment should be granted on Plaintiff's New York State Human Rights Law and retaliation claims.

Plaintiff responds that (1) there are material disputed facts that preclude summary judgment; (2) Defendant is absolutely liable for Brown's tangible employment actions; and (3) The Children's Village is liable for the hostile work environment Brown created and it condoned. Plaintiff also argues that summary judgment must be denied on Plaintiff's retaliation and New York law claims.

For the reasons stated below, Defendant's motion for summary judgment is granted in part and denied in part.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

The Second Circuit has warned district courts to "be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999). *See also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994) ("Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.").

## I. *Quid Pro Quo Harassment*

■ In order to state a harassment claim under a *quid pro quo* theory, a plaintiff must allege that (1) she was subject to unwelcome sexual conduct or an unwelcome sexual advance, and (2) her reaction to that conduct was used as the basis for an adverse employment action. *Karibian v. Columbia University*, 14 F.3d 773, 777 (2d Cir.1994). "A tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." *Ellerth*, 524 U.S. at 762, 118 S.Ct. 2257. Where a direct supervisor takes out a tangible employment action against an employee, an employer is vicariously liable for such an action. *Id.; Faragher*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662. An employer can invoke no defenses to avoid vicarious liability under those circumstances. *Id.; Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 293–94 (2d Cir.1999).

The Supreme Court noted in *Ellerth* that a supervisor need not act alone in making the tangible employment decision—the determination may be subject to review by higher-level supervisors as long as the supervisor obtains the "imprimatur of the enterprise and use[s] its internal processes." *See* 524 U.S. at 762, 118 S.Ct. 2257 (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990) (noting that the Career Path Committee fired the plaintiff, not the supervisor, however, the employer was still liable because the committee functioned as the supervisor's "cat's-paw")).

■ Plaintiff has set forth facts sufficient to demonstrate that Brown was Hill's direct supervisor, capable of carrying out tangible employment actions against her. Brown had the authority to change Plaintiff's schedule. While Brown could not fire Hill unilaterally, she was not terminated until he recommended that action. Furthermore, Alford did not even inquire into Brown's reasons for recommending Hill's termination. Plaintiff has put forth sufficient evidence to demonstrate that Brown was her supervisor, capable of more than mere "saber rattling." *Gary v. Long*, 59 F.3d 1391 (D.C.Cir.1995); *Thomas v. Med-*

*co,* 95 Civ. 8401, 1998 WL 542321, at *10 (S.D.N.Y. Aug.26, 1998) (finding that even if the alleged harasser does not have the final say in an employment decision, if the influence is significant the harasser may be deemed the de facto decision maker).

The question of whether Brown took tangible employment actions against Plaintiff is a more difficult one. Plaintiff alleges two adverse employment actions against her (1) that Brown changed Hill's schedule from Fridays and Saturdays off to a less favorable schedule, where she would have to work weekends; and (2) that she was fired.

■ "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. In most cases, a tangible adverse employment action "inflicts direct economic harm on a plaintiff." *Id.* The question of whether Plaintiff was the subject of a tangible employment action is a close one, since the Second Circuit has stated that a tangible employment action occurs when an employee is denied an *economic* benefit. *See Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1176 n. 6 (2d Cir.1996) ("Insofar as [plaintiff] did not allege an economic benefit on account of her gender or because she rejected a sexual advance by a co-worker, Reed could not proceed under the … *quid pro quo* theory."); *Kotcher v. Rosa & Sullivan Appliance Ctr.,* 957 F.2d 59, 62 (2d Cir.1992) ("If the plaintiff can show that she suffered an economic injury from her supervisor's actions, the employer becomes strictly liable without any further showing of why the employer should be responsible for the supervisor's conduct.").

■ If Plaintiff had not been re-hired there would be no question that she suffered an economic detriment. In this case, however, the tangible action taken against Hill was remedied. Hill concedes this: she was reinstated to her position as a sociotherapist at the same wage with full back pay, benefits, and seniority accrued during the period of her separation from employment, and was assigned to the shift that she requested. (Hill tr. at 87–89; Ekelman Aff., Exh. O.) Defendant also assigned Hill to a different cottage to remove her from the supervisor she claimed was harassing her. She thus received from Defendant, on a voluntary basis, everything she could have recovered in litigation.[2]

Plaintiff did receive a warning letter regarding her conduct with Brown. However this alone is insufficient to create a tangible employment detriment. *See Durant v. Nynex and Bell Atlantic Corp.,* 101 F.Supp.2d 227, 233 (S.D.N.Y.2000) (finding no tangible employment action where disciplinary steps were imposed against an employee for failing to work on the Sabbath, but she was never disciplined); *Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 283 (S.D.N.Y.1999) ("Negative evaluations alone, without any accompanying adverse result, however, are not cognizable.").

Because Plaintiff cannot establish a tangible employment action, she may not proceed under a *quid pro quo* theory of harassment.

**2.** Plaintiff has not identified any evidence demonstrating that the decision to fire her was made maliciously or with reckless indifference, which would have been necessary for her to recover punitive damages on her *quid pro quo* claim. *Cush–Crawford v. Adchem Corp.,* 271 F.3d 352, 356 (2d Cir.2001)

## II. *Hostile Work Environment*

Plaintiff may, however, go to trial on a hostile work environment theory.

 A claim of a sexually hostile work environment is actionable under Title VII if the workplace is both objectively and subjectively offensive. In other words, Plaintiff must demonstrate not only that she found the environment to be offensive, but that a reasonable person also would have found the environment to be hostile or abusive. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Title VII is violated when the workplace ambience is sufficiently severe or pervasive to create a discriminatorily hostile or abusive work environment. *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367 (applying *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The alleged discriminatory conduct must be viewed in light of the totality of the circumstances, including the frequency of the discriminatory actions, its severity, whether the conduct was physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interfered with the employee's work performance. *Faragher*, 524 U.S. 775, 787–88, 118 S.Ct. 2275 (1998).

For the purposes of this motion, Defendant does not contest that Brown created a hostile work environment. The only question is whether Plaintiff has set forth facts to raise an issue regarding Defendant's liability for this hostile environment.

 An employer may escape liability for hostile work environment harassment if the employer demonstrates that (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir.2001); *Caridad v. Metro–North Commuter R.R. Co.*, 191 F.3d 283, 293–29 (2d Cir.1999).

Defendant argues that they exercised reasonable care to prevent and correct any alleged inappropriate conduct and that Hill unreasonably failed to use Defendant's sexual harassment complaint procedure. Plaintiff, of course, disagrees.

 An employer may be held liable under Title VII for a hostile work environment if the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995). In this case, Plaintiff has raised an issue over whether Defendant took "prompt remedial action reasonably calculated to resolve the problem was taken." *Tunis v. Corning Glass Works*, 747 F.Supp. 951, 959 (S.D.N.Y.), aff'd, 930 F.2d 910 (2d Cir.1991); *Hylton v. Norrell Health Care of New York*, 53 F.Supp.2d 613, 618–19 (S.D.N.Y.1999) (granting summary judgment on plaintiff's hostile work environment claim where the employer's response was prompt, reasonable and effective); *see also Brown v. Perry*, 184 F.3d 388, 397 (4th Cir.1999) (granting summary judgment where employer's response was prompt, reasonable and effective, and stating that "[t]he law requires reasonableness, not perfection").

 Defendant is correct that if the employer conducts an investigation into the plaintiff's complaints upon learning of the problem, and undertakes remedial action, those actions may illustrate the employer's reasonableness in correcting any sexually harassing behavior. *Caridad*, 191 F.3d at 295. In *Perry v. Ethan Allen*,

*Inc.*, 115 F.3d 143, 154 (2d Cir.1997), for example, the Second Circuit affirmed a dismissal of a hostile work environment claim where the employer immediately investigated a sexual harassment complaint, confronted the accused and warned him that the employer would not tolerate further harassment. In this case, Plaintiff has raised an issue over whether The Children's Village's response was "prompt"— Plaintiff claims that The Children's Village had notice of her complaint before she was fired. This contrasts with Defendant's argument that it investigated her grievance immediately upon learning of it.

■ Furthermore, Plaintiff has raised an issue of whether the investigation that resulted was in fact reasonably calculated to resolve the problem. Defendant did maintain a written sexual harassment policy. The existence of a written sexual harassment policy is a consideration in determining whether an employer exercised reasonable care. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275, *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Caridad*, 191 F.3d at 295; *Brown*, 184 F.3d at 396. However, merely possessing a written sexual harassment policy is insufficient to demonstrate reasonable care in preventing sexual harassment; the written policy must also be reasonably promulgated. Plaintiff has raised a question of fact over whether this policy was regularly distributed to employees because she claims that she did not see it until after she was fired.

■ Moreover, Plaintiff asserts that the sexual harassment policy was inadequately implemented. There is a question of fact for the jury regarding whether The Children's Village exercised reasonable care in response to allegations of sexual harassment. Hill claims that Defendant's practice differed sharply from its stated policy. For example, Plaintiff claims that the written sexual harassment policy mandates that Lovelle, as a supervisor, had a duty to report Plaintiff's complaints and never did. Plaintiff has raised evidence from which a jury could find that Lovelle and Alford had insufficient training to even recognize sexual harassment when they saw it. (*See e.g.*, Alford tr. at 61, 71; Lovelle tr. at 38–39.)

Furthermore, Hill contends that when she made an appointment to speak with Alford about Brown's behavior, instead of meeting with her, Alford called Brown to ask him about Plaintiff's complaints. Alford then accepted Brown's recommendation that Hill should be fired without ever talking to Hill about her concerns. Arguably, this stripped Plaintiff of her avenue of complaint that is set out in the sexual harassment policy—the very complaint procedure that Defendant contends Plaintiff failed to use. Therefore, Defendant's argument that Plaintiff did not meet her obligation of reasonable care to avoid harm is not valid.

■ The reasonableness of an employer's response must be assessed on the totality of the circumstances. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir.1998). Once an employer learns of potential sexual harassment, Title VII imposes a duty on the employer to conduct a prompt and thorough investigation of these charges. *Watts v. New York City Police Dep't*, 724 F.Supp. 99 (S.D.N.Y. 1989). Plaintiff argues that the investigation was not prompt. She also has raised concerns about whether Alford's investigation was reasonable, since he did not take notes during his interviews or prepare questions ahead of time. (Alford tr. at 166). Plaintiff also alleges that his questions were too general to be effective.

Because Plaintiff has identified issues of material fact regarding Defendant's response to Plaintiff's complaints, Defendant is not entitled to summary judgment as a

matter of law on the hostile environment claim.

### III. *Retaliation Claims under Title VII and the NYSHRL*

■ Claims of retaliation are analyzed under the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of retaliation under Title VII or the NYSHRL, Plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of the activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir.2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996); *Galdieri–Ambrosini v. Nat'l Realty and Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 4, 1307–10 (2d Cir.1995)) (abrogated on other grounds by *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)) (stating that in evaluating plaintiff's retaliation claim under NYSHRL, the court applies the same standard used under Title VII).

If a plaintiff establishes a prima facie case, the employer then must "articulate some legitimate, nondiscriminatory reason for the employer's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant does so, the burden is then on the plaintiff to "prove that the proffered reason was merely a pretext for retaliation and that the employer's action was prompted by an impermissible motive." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–12, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Plaintiff has not alleged an adverse employment action sufficient to make out a prima facie case of retaliation. In order to set forth an adverse employment action, a plaintiff must describe a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal quotation and citation omitted). Plaintiff asserts that she was fired in retaliation for making an appointment to complain to Alford about Brown's sexual harassment. However, as discussed earlier, this action was remedied by the Children's Village. The two possible adverse actions remaining are her transfer to another cottage and the warning letter that was placed in her file. A transfer can constitute an adverse employment action if it represents a significant change in one's work. *de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs.*, 82 F.3d 16, 21 (2d Cir.1996); *Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (2d Cir.1980). In this case, however, Plaintiff does not argue that the change of cottage significantly altered her job description—she was put in the same position, with the same responsibilities. The warning letter that was placed in her employment file is insufficient to constitute an adverse employment action because Hill suffered no adverse action as a result of that document. *See Durant*, 101 F.Supp.2d at 233; *Valentine*, 50 F.Supp.2d at 283.

Hence, Defendant's motion for summary judgment on the retaliation claims under Title VII and New York Human Rights Law is granted.

### IV. *New York Human Rights Law*

■ New York law regarding employer liability for discrimination is stricter than federal law. In order to establish

employer liability under the New York State Human Rights Law, a plaintiff must demonstrate that the employer acquiesced in the discriminatory conduct or subsequently condoned it. *Father Belle Cmty. Ctr. v. State Div. of Human Rights ex rel. King,* 221 A.D.2d 44, 51–56, 642 N.Y.S.2d 739, 745–47 (4th Dept.1996); *State Div. of Human Rights ex rel. Greene v. Saint Elizabeth's Hosp.,* 66 N.Y.2d 684, 687, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985). Condonation contemplates a knowing, after the fact forgiveness or acceptance of an offense. *Father Belle,* 221 A.D.2d at 53, 642 N.Y.S.2d at 746. An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation. *Id.*

Plaintiff has set forth sufficient evidence from which a jury could conclude that Defendant condoned Brown's conduct. Plaintiff has alleged that Alford's investigation of Brown's sexual harassment—which consisted of asking general questions (that he did not create in advance) and not taking any notes—was so ineffective that it was meaningless. Despite statements from Hill, Earl, Lovelle, and Cooper, Alford believed Brown's denials because he had known Brown for 10 years. Plaintiff contends that this result was a foregone conclusion, therefore it indicates condonation of Brown's conduct. Because Plaintiff has raised an issue of fact regarding Defendant's condonation of the discriminatory conduct, The Children's Village is not entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment on the retaliation claims is granted. Since Plaintiff did not suffer from a tangible employment action, she cannot proceed under a *quid pro quo* theory of sexual harassment. However, her hostile work environment claims under Title VII and New York State Human Rights Law remain.

This constitutes the decision and order of the Court.