Munroe v. Compaq Computer          CV-00-379-JM  10/18/02  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Terri Munroe

    v.                                          Civil No. 00-379-JM
                                           Opinion No. 2002 DNH 186

Compaq Computer Corporation,
f/k/a Digital Equipment Corporation


**ORDER**

In this action, the plaintiff, Terri Munroe alleges that she was subjected to sexual harassment while employed by the defendant, Compaq Computer Corporation, formerly known as Digital Equipment Corporation,[1] in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., and N.H. Rev. Stat. Ann. ("RSA") 354-A:7 (I) and (V)(c). Defendant has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (document no. 24). Munroe filed an objection. The parties appeared for oral argument on the motion on October 10, 2002. For the reasons set forth herein, Defendant's summary judgment motion is granted with respect to Munroe's state law

---

[1]Munroe was employed by Digital during the time period relevant to this matter. Munroe filed this action against Compaq, which acquired Digital subsequent to the events in question. Subsequent to the commencement of this action, Compaq was acquired by Hewlett-Packard. For convenience, Compaq is referred to hereinafter as either "Defendant" or "the Company."

sexual harassment claim, but the motion is denied with respect to her sexual harassment claims under Title VII.

## Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

Provided that there has been adequate time for discovery, a properly supported summary judgment motion must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of

2

establishing that there is no genuine issue of material fact.
See id, at 323.  If that burden is met, the opposing party can
avoid summary judgment only by providing properly supported
evidence of disputed material facts that would require trial.
Id. at 324.

In ruling on a summary judgment motion, the court construes
the evidence in the light most favorable to the non-movant,
resolving all inferences in its favor, and determines whether the
moving party is entitled to judgment as a matter of law.  See
Saenger Org. v. Nationwide Ins. Licensing Assocs., 119 F.3d 55,
57 (1st Cir. 1997).  The undisputed facts, viewed in the light
most favorable to Munroe, are recited below.

## Background

The Company hired Munroe as a temporary employee in October
1993.  As a Logistics Associate, Munroe worked in a warehouse
facility located in Salem, New Hampshire.  Her responsibilities
included receiving, storing, selecting and delivering computer
components.  At times Munroe was the only woman working on her
shift, which included as many as forty other workers.  She was
hired as a full-time employee on September 30, 1996.  Munroe
alleges numerous instances of harassment at the Company between

early 1996 and her resignation on April 20, 1998.

I.    Co-worker Harassment Allegations

Real Guilbeault, one of Munroe's co-workers, was hired by the Company in the fall of 1993. Beginning in 1996, Guilbeault began making sexual advances toward Munroe. Munroe alleges that Guilbeault's comments became increasingly offensive over time. Initially, Munroe tried to ignore Guilbeault or walk away. When that did not end the comments, Munroe told Guilbeault not to talk to her.

Despite her negative reactions, Guilbeault persisted by telling Munroe that she had a "luscious ass" and calling her "sweet cheeks." On at least three occasions Guilbeault asked Munroe to go to the Red Roof Inn with him during break. He repeatedly told Munroe "I want you." Many times Guilbeault's comments were accompanied by a sexually suggestive gesture, such as sucking his lips. In addition to making offensive comments, Guilbeault committed the following acts: (1) he closed the door where he and Munroe were working and blocked it with his body to prevent Munroe from leaving; and (2) he left a bottle of wine or champagne, make-up, and a nightgown in Munroe's locker with a note containing sexually suggestive comments.

In 1998, Guilbeault sent Munroe three sexually suggestive e-mail messages,[2] and touched Munroe inappropriately on two occasions in April 1998.  On the first occasion, Guilbeault grabbed Munroe by the arm and pulled her onto his lap.  On the second occasion, Guilbeault touched Munroe on her buttocks.

Some time after Guilbeault's conduct occurred, Munroe complained to Vincent Kanhai-Singh ("Singh"), who had become her direct supervisor in early 1996.  Munroe told Singh about the incidents of Guilbeault blocking the door and leaving gifts in her locker.  Munroe also told Singh about the e-mails that Guilbeault sent.  According to Munroe, Singh did nothing about her complaints.  When Munroe informed Singh about Guilbeault's e-mails, Singh laughed when he read them and then deleted them from her computer.  Singh told Munroe to speak with Guilbeault and resolve the problem on her own.

II.  Supervisor Harassment Allegations

Munroe alleges that Singh began making offensive comments to her in 1996.  Munroe estimates that Singh made offensive comments approximately twice per week.  On one occasion, Munroe asked Singh where he wanted her in reference to where she should stand

---

[2]Munroe submitted one of the e-mails she received from Guilbeault with her objection.

5

to perform a particular job. Singh responded that Munroe should not ask that question of "a man who isn't getting any sex at home." On another occasion, when Munroe was ill, she asked Singh if she could go home. Singh told Munroe that she could only leave if she left with him. Munroe refused and Singh forced her to work the rest of her shift.

In 1998, Singh told Munroe that he had "a job for her under his desk." Singh also told Munroe to stop wearing shorts at work because they were not short enough, and therefore unacceptable. At unspecified points, Singh also did the following: (1) asked Munroe to wear a skirt to work so that he could stand below her while she was standing on high equipment or a ladder and direct her where to go; (2) took out his checkbook and asked Munroe how much money she wanted to go out with him; (3) asked Munroe to go home with him; (4) asked Munroe on three occasions to go to Foxwoods Casino with him offering to pay the expenses; (5) told Munroe in front of a male co-worker that she was not happy unless she has "a [penis] hanging in front of her face."

IV. The Company's Sexual Harassment Policy

When Munroe began her employment in October 1993, the Company had an anti-harassment policy in place, which prohibited

6

sexual harassment.  Under the policy, employees were encouraged first to report instances of harassment to their supervisors or managers, but they were not required to do so.  The policy indicated that others were available to receive complaints referencing the Company's "Open Door Policy" and Equal Employment Opportunity/Affirmative Action representatives.  The policy stated that "[m]anagers, supervisors and other designated resources either observing or receiving reports of harassment are required to treat the issue seriously and take appropriate steps to ensure compliance with this policy."  The policy directed that investigations were to be conducted in a timely manner and confidentially.

On September 29, 1997, the Company issued a separate sexual harassment policy ("Sexual Harassment Policy").  The Sexual Harassment Policy states in pertinent part:

> Employees who believe that they have been sexually harassed are encouraged to pursue their complaint within [the Company] by contacting their manager or supervisor, Human Resources professional, or their Regional EEO/Diversity Manager.  Manager, supervisors or Human Resource professionals observing or receiving such complaints must contact the U.S. EEO/Diversity organization for direction in investigating the complaint.

In addition, the Sexual Harassment Policy provided a 24-hour

7

hotline number that was available for receipt of complaints, which the employee could file anonymously if desired.

There is evidence that the Company had a practice of giving its anti-harassment and sexual harassment policies to newly-hired employees during orientation, and that the policies were posted on the bulletin boards throughout the facility. There is also evidence that the policies were accessible to employees on the Company's computer system. However, there is no direct evidence that Munroe received a copy of the Company's anti-harassment policy when she began working at the Company. It is undisputed that Munroe received sexual harassment training on or about December 12, 1997, and that the training included a discussion of ways that an employee could make a complaint of harassment.

V.    Munroe Complains to Human Resources and Resigns

On April 20, 1998, Munroe reported to Diane O'Connor, a human resources consultant for the Company, that she was being harassed by Guilbeault and Singh. Munroe reported that the harassment was getting worse and she could not take it anymore. She states that she did not report the harassment earlier because she was very intimidated by Singh. According to Munroe, Singh held daily meetings wherein he told the employees he supervised

8

that they should never "go over his head" by reporting a problem to anyone else. Singh directed Munroe and her co-workers to come to him with complaints.[3] Munroe did not believe that reporting the harassment prior to resigning would do any good because she had reported the incidents involving Guilbeault to Singh and nothing had been done about it.

Upon receiving Munroe's complaint, O'Connor immediately relayed the matter to Robert Brintz, an attorney working in the Company's EEO Compliance organization. Munroe resigned on April 20, 1998 even though Brintz urged her to stay and told her that the Company would conduct a thorough investigation.

Brintz then conducted an internal investigation between April 24 and May 4, 1998. He interviewed more than a dozen employees including Munroe. On May 7, 1998, Compaq terminated Guilbeault and prompted Singh's resignation.

Brintz informed Munroe of the terminations and urged her to return to work. Despite her initial resistance, the Company continued to contact Munroe and she returned to work in July

_____

[3]Munroe states in her affidavit that she believed that she could be fired if she violated Singh's order. Munroe Aff. at ¶ 20. However, Munroe admitted at her deposition that her fear arose out of her status as a contract worker. Munroe did not fear losing her job after she became a full-time employee in September 1996. Munroe Deposition Transcript at 80:18-23.

9

1998.  Munroe does not allege that she suffered any sexual harassment following her reinstatement.  However, on July 8, 1998, Munroe filed a complaint with the New Hampshire Commission for Human Rights ("NHCHR") and the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that the Company violated Title VII and N.H. RSA 354-A.

Munroe remained employed at the Company's Salem, New Hampshire, facility until it was closed in late 1999.  She filed this action on August 4, 2000, which followed the dismissal of her administrative complaint pending before NHCHR.

## Discussion

Defendant argues that it is entitled to summary judgment on Munroe's Title VII claims of supervisor and co-worker harassment on the grounds that (a) Munroe failed unreasonably to notify Defendant of the alleged misconduct of her co-worker and immediate supervisor; (b) Defendant responded immediately and effectively when it learned of the problem; and (c) Title VII's 300-day statute of limitations renders untimely most of Munroe's allegations.  With respect to Munroe's state law claim, Defendant argues that it is entitled to summary judgment because there is no private right of action under N.H. Rev. Stat. Ann. 354-A.

10

I.   Title VII Claims

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Sexual harassment is unlawful discrimination on the basis of sex under Title VII.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986); Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998).

A.   Statute of Limitations

Under 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff must file a charge with the EEOC within a certain period "after the alleged unlawful employment practice occurred."  This period is either 180 days, or 300 days if the plaintiff instituted proceedings with a state or local agency with authority to seek relief based on the plaintiff's claims.  42 U.S.C. § 2000e-5(e)(1).  Here, the 300-day period applies to Munroe because she filed a charge with the NHCHR and the EEOC on July 8, 1998.

Defendant argues that the 300-day limitations period renders untimely most of Munroe's allegations.  Applying the 300-day

11

rule, Defendant argues that Munroe's Title VII claims are limited to allegations that occurred after September 11, 1997.  Munroe argues in response that she meets the requirements of the continuing violation doctrine, an exception to the 300-day limitations period.  Under the continuing violation doctrine, a plaintiff may recover for events outside of the 300-day limitations period if the acts "are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims."  O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (internal quotations omitted).

This Court need not consider whether Munroe meets the requirements of the continuing violation doctrine because the Supreme Court recently clarified that a "charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  National R.R. Passenger Corp. v. Morgan, -- U.S. --, 122 S. Ct. 2061, 2077 (2002).  As the Supreme Court explained, a hostile work environment is created by "a series of separate acts that collectively constitute one 'unlawful

12

employment practice.'" Id. at 2074 (quoting 42 U.S.C. § 2000e-5(e)(1)). The Court further explained that Title VII "does not separate individual acts that are part of the hostile work environment claim from the whole for purposes of timely filing and liability." Id. at 2075. To meet the statute of limitations, "the employee need only file a charge within [300] days of any act that is part of the hostile work environment." Id.; see also, Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18 (1st Cir. 2002) ("the statute of limitations is satisfied as long as the plaintiff files a charge within 300 days of one of the many acts that, taken together, created the hostile work environment"). Munroe meets the applicable standard. She alleges that the discriminatory acts of her co-worker and supervisor over time created a hostile work environment. She filed her charge with the NHCHR and EEOC on July 8, 1998, which was within 300 days of the touching incidents by Guilbeault that Munroe alleges occurred in April 1998. Therefore, all of Munroe's allegations of harassing conduct may be considered in determining whether Munroe was subjected to an actionable hostile work environment. See National R.R., 122 S. Ct. at 2074 (a court may consider the entire period of the alleged hostile work

13

environment provided that an act contributing to the claim occurs with the filing period).

B.    The Existence of a Hostile Work Environment

To establish a hostile work environment under Title VII, Munroe must show that the harassment based on her sex was "sufficiently severe or pervasive to alter the conditions of her employment," and that "the work environment was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [the plaintiff] in fact did perceive to be so." Conto v. Concord Hosp., Inc., 265 F.3d 79, 82 (1st Cir. 2001) (internal quotations and citations omitted). This is not a precise test, and the decision as to "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23 (1993); see also, Conto, 265 F.3d at 81 (a determination as to whether the defendant subjected the plaintiff to a hostile work environment "necessarily entail[s] a fact-specific assessment of all the attendant circumstances."). "Several factors typically should be considered in making this determination: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

14

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'." O'Rourke, 235 F.3d at 729 (quoting Harris, 510 U.S. at 23). However, no single factor is required. See Harris, 510 U.S. at 23.

The requirement that the harassment be sufficiently severe or pervasive to alter the plaintiff's employment conditions "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Id. at 21. Accordingly, while offhand comments and isolated incidents are insufficient to constitute harassment under Title VII, see id.; O'Rourke, 235 F.3d at 729, "Title VII comes into play before the harassing conduct leads to a nervous breakdown." Harris, 510 U.S. at 22.

Defendant argues that Munroe's harassment allegations were not sufficiently severe or pervasive to alter her conditions of employment. Munroe alleges that she was subjected to repeated sexual propositions and offensive comments based on her sex. She also alleges that over time those comments became more offensive. Munroe later received offensive sexually-charged e-mails, and was subjected to offensive touching in the workplace. And she alleges that she was denied sick leave on one occasion because of

15

Singh's harassment.  Accepting the evidence in the light most favorable to the plaintiff, she has shown that the allegedly harassing behavior was consistent and even habitual over the course of her employment.  See DeNovellis v. Shalala. 124 F.3d 298, 311 (1st Cir. 1997) (harassment that is severe enough to alter the victim's workplace experience or pervasive enough to become the defining condition of the workplace violates Title VII).  Because harassment serious enough to create a hostile work environment often involves a cumulative process in which a series of acts or events mount over time to create an unlawfully hostile atmosphere, the question as to when offensive conduct violates Title VII is often better resolved by the factfinder at trial and not on summary judgment.  See O'Rourke, 235 F.3d at 732.  Again, Munroe has introduced sufficient evidence of harassment to satisfy her burden on summary judgment.  Whether the conduct that Munroe was subjected to was or at some point over the course of her employment became sufficiently severe or pervasive to support a Title VII harassment claim is best reserved for trial.

    C.   Ellerth/Faragher Affirmative Defense for Supervisor Harassment Claims

A defendant employer may avoid vicarious liability for the misconduct of a supervisor in a Title VII hostile work

16

environment case by establishing that it is entitled to the affirmative defense set forth in the Supreme Court's holdings in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. Boca Raton, 524 U.S. 775 (1998). The defense, which is only available when no tangible employment action has been taken against the plaintiff, "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807. See also White v. New Hampshire Dep't of Corr., 221 F.3d 254, 261 (1st Cir. 2000) (setting forth the elements of the affirmative defense). The Ellerth/Faragher affirmative defense is "subject to proof by preponderance of the evidence." Ellerth, 524 U.S. at 765 (citing Fed. R. Civ. P. 8(c)).

### 1. Tangible Employment Action

An employer will be subject to vicarious liability when a supervisor takes a tangible employment action against a subordinate. Ellerth, 524 U.S. at 760. According to the Supreme Court, "[a] tangible employment action constitutes a significant

17

change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761.  A tangible employment decision "requires an official act of the enterprise, a company act." Id. at 762.  That decision is usually "documented in official company records, and may be subject to review by higher level supervisors." Id.

If Singh's conduct resulted in a tangible employment action within the meaning of the Supreme Court's definition, then the Defendant is not entitled to assert the Ellerth/Faragher affirmative defense.  I turn to that issue in the next section.

2.    Constructive Discharge

In her objection, Munroe argues that she was constructively discharged in April 1998, and that her constructive discharge constitutes a tangible employment action that renders the Ellerth/Faragher affirmative defense unavailable to the Defendant.  Although there is no claim labeled "constructive discharge" in Munroe's Complaint, the Defendant conceded at oral argument that paragraph 19 of the Complaint provided fair notice, under the principles of notice pleading, that Munroe contended

18

that she was constructively discharged.[4]

Nevertheless, Defendant argues that constructive discharge is not a "tangible employment action" since it is not an action by the Company. There is considerable dispute whether a constructive discharge constitutes a tangible employment action under Ellerth/Faragher. See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 294-295 (2d Cir. 1999) (constructive discharge is not a tangible employment action because, among other things, it is not ratified or approved by the employer), cert. denied, 529 U.S. 1107 (2000); Scott v. Ameritex Yarn, 72 F. Supp. 2d 587, 594 (D.S.C. 1999) (constructive discharge is not a tangible employment action because it is not made with the authority or approval of the employer); Desmarteau v. Wichita, 64 F. Supp. 2d 1067, 1079 (D. Kan. 1999) (the Supreme Court's focus on the tangible actions of the supervisor logically excludes actions which are "constructively" attributed to him); but see Jackson v. Ark. Dept. of Ed., Voc. and Tech. Ed. Div., 272 F.3d

---

[4]The Complaint states in relevant part that:

On April 20, 1998, Munroe could no longer tolerate the extremely hostile work environment and management's failure to take any correct[ive] actions. Munroe, was left with no choice but to terminate her employment.

Compl., ¶ 19.

19

1020, 1026-27 (8th Cir. 2001) (finding that constructive discharge constitutes a tangible employment action and citing Ellerth), cert. denied,-- U.S. --, 122 S. Ct. 2366 (2002); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 149 n.5 (3d Cir. 1999) (finding it clear under the holdings of Ellerth and Faragher that a constructive discharge renders the affirmative defense unavailable); Cherry v. Menard, Inc., 101 F. Supp. 2d 1160, 1171-74 (N.D. Iowa 2000) (constructive discharge resulting from a supervisor's harassment is a tangible employment action). The First Circuit has not squarely addressed this issue.

The Court does not attempt to settle this debate here. Even considering the most well-reasoned argument in support of finding vicarious liability based on a theory of constructive discharge, the undisputed facts of the instant case show that Singh's conduct cannot be construed as a tangible employment action by the Company.

It is undisputed that the Company, through Brintz, informed Munroe on the same day that she resigned that the Company would conduct a thorough investigation of her complaint and urged her to remain at work. The Company then conducted its investigation promptly, including by interviewing Munroe, and caused the

terminations of Munroe's alleged harassers.  At no point did the Company affirm or ratify Singh's harassing conduct.  To the contrary, the Company expressly repudiated it.  If the Company failed to take any action to address Munroe's complaint after she resigned, Munroe would at least have a viable argument that her constructive discharge was an official act of the company.  But that is not case.  Therefore, the Court finds that Munroe cannot establish the existence of a tangible employment action by the Company.  The Defendant is entitled to assert the Ellerth/Faragher affirmative defense in this action.

> 3.  Reasonable Care to Prevent and Correct Harassment

Depending on the employment context, proof that an employer has promulgated an anti-harassment policy with a complaint procedure may be sufficient for the employer to show that it has taken reasonable care to prevent harassment.  See Marrero v. Goya of Puerto Rico, supra, 304 F.3d at 20 ("the availability of the affirmative defense often will turn on whether the employer had established and disseminated an anti-discrimination policy, complete with a known complaint procedure."); Shaw v. AutoZone, Inc., 180 F.3d 806, 811 (7th Cir. 1999) (the existence of an appropriate anti-harassment policy will often satisfy the first

21

prong of the Ellerth/Faragher affirmative defense). While there is no direct evidence the Munroe was given a copy of the Company's anti-harassment policy prior to December 1997, it is undisputed that the policy was posted on bulletin boards throughout the Company and available on the Company's computer system, which was accessible to Munroe. It is also undisputed that Munroe attended a sexual harassment training by December 12, 1997 wherein the Company's policy was discussed. The policy identifies various avenues for making a complaint including a hotline number that employees may call anonymously. The policy also informs employees that retaliation against individuals who make complaints is unlawful and will not be tolerated.

Munroe argues that the Company did not take reasonable care to prevent harassment because the Company allowed Singh to remain in a supervisory role despite past allegations of misconduct against him. Munroe submitted evidence that three accusations of inappropriate sexual remarks were made about Singh prior to Munroe's allegations.[5] Two of these remarks were allegedly made

[5]See Pl. Opp., Ex. 8, pp. 6 and Pl. Opp., Ex. 10, p. 4. The Defendant disputes Munroe's contention that Singh's inappropriate remarks were sexual in nature. Defendant also argues that Plaintiff's evidence pertaining to Singh's remarks is inadmissible. For the purposes of summary judgment, however, the Court construes the evidence in the light most favorable to

22

prior to 1985. There is no record of any action the Company took with respect to the earliest allegation, but Singh was disciplined for a remark he made in 1984. He received a written warning for the third remark, which occurred in July 1997. Munroe argues that the Company did not take reasonable care to prevent further harassment because there is no evidence that the Company limited or monitored Singh's supervisory role after the July 1997 warning.

The Court finds that Munroe has raised a genuine issue of material fact regarding whether the Company exercised reasonable care to prevent harassment. Munroe points to some evidence that the Company was aware of Singh's misconduct, but did not take reasonable care to prevent further harassment. In this regard, the Court notes that the Defendant bears the burden of proof on this issue. When the moving party bears the burden of proof on the issue in question, the court may only grant summary judgment if the moving party's evidence is uncontradicted and unimpeached.

Munroe. In addition, the nonmoving party need not produce evidence in a form that would be admissible at trial to avoid summary judgment. See Celotex, 477 U.S. at 324. Under Rule 56(e), a party opposing summary judgment may do so by referring the court to any of the kinds of evidentiary material in Rule 56(c), except the mere pleadings alone. Id. Munroe provided the Company's Answers to Interrogatories in support of the 1997 remark.

See Marrero, 304 F.3d at 22 (explaining the standard for judgment as a matter of law); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (the standard for granting summary judgment mirrors the standard for a directed verdict). As discussed above, Munroe points to some material evidence to support her argument that the Defendant did not act reasonably to prevent harassment. Whether the Defendant has the preponderance of the evidence on the issue of reasonable care to prevent harassment is a question for the factfinder at trial.

The decisions cited by Defendant where the Court determined that the employers took reasonable care to prevent harassment as a matter of law are inapposite. In Shaw v. AutoZone, supra, the court noted that the employer presented undisputed evidence that it acted reasonably to prevent and respond to harassment. 180 F.3d at 812. Thus, the court found, as a matter of law, in favor of the employer on the first prong of the Ellerth/Faragher affirmative defense. Similarly, in Scrivner v. Socorro Indep. Sch. Dist., 169 F.3d 969, 971 (5th Cir. 1999), the court found that the employer was entitled to the affirmative defense because the plaintiff failed to cite any material evidence in opposition to the evidence submitted by the defendant employer. The facts

24

of Shaw and Scrivener are distinguishable from the facts in the instant case.

Because the court finds that Munroe raises a genuine issue of material fact on the first element of the Ellerth/Faragher defense, the Court need not consider the second element of the defense. The Company's motion for summary judgment on Munroe's supervisor harassment claim is denied.

D.    Co-Worker Harassment Claim

Courts apply a negligence standard for determining employer liability for co-worker harassment. See Crowley v. L.L. Bean, Inc., No. 01-2732, --F.3d--, 2002 WL 31056020 at *11 (1st Cir. Sept. 19, 2002); White, supra, 221 F.3d at 261. This standard requires a Title VII plaintiff to show that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." Crowley, 2002 WL 31056020 at *11; White, 221 F.3d at 261.

The Company argues that it is entitled to summary judgment on Munroe's co-worker harassment claim because Munroe did not give the Company notice of Guilbeault's harassment. As part of this argument, the Company contends that Munroe's complaints to Singh cannot be imputed to the Company. The Court disagrees.

25

Munroe acted in accordance with the Company's sexual harassment policy in reporting Guilbeault's harassment to her direct supervisor, and Munroe was entitled to rely on Singh to take appropriate action in response to her complaint.

In Distasio v. Perkin Elmer Corp., 157 F.3d 55, 64 (2d Cir. 1998), the court found that an official's knowledge of sexual harassment allegations will be imputed to an employer in three circumstances:

> (A) the official is at a sufficiently high level in the company's management to qualify as a proxy for the company; or (B) the official is charged with a duty to act on the knowledge and stop the harassment; or (C) the official is charged with a duty to inform the company of the harassment.

Id. (quoting Torres v. Pisano, 116 F.3d 625, 636-37 (2d Cir.), cert. denied, 522 U.S. 997 (1997)).

Clearly, Singh was a person in the Company who was charged with a duty to inform the company of harassment complaints. The Company's Sexual Harassment Policy states that "Managers, supervisors or Human Resource professionals observing or receiving [sexual harassment] complaints must contact the U.S. EEO/Diversity Organization for direction in investigating the complaint." In direct contravention of the Company's sexual harassment policy, Singh did not transmit Munroe's complaints.

26

Moreover, Singh knew that Munroe found Guilbeault's conduct unwelcome, but did not make any direct attempt to correct Guilbeault's behavior. Under these circumstances, Munroe may proceed with her co-worker harassment claim against the Company by attempting to impute her supervisor's knowledge of the alleged harassment to the Company. Distasio, 157 F.3d at 64; see also, Crowley, 2002 WL 31056020 at *12 (employer subject to liability where employer maintained a policy that permitted workers to report sexual harassment to team leaders who had a duty to report the complaint up the chain of command); Young v. Bayer Corp., 123 F.3d 672, 675 (7th Cir. 1997) (plaintiff placed her complaint in the proper channel under the employer's internal policies governing harassment because the plaintiff's department head was one of four authorized channels for lodging a complaint).

Defendant argues that, as a matter of law, Munroe cannot rely on her complaints to Singh about Guilbeault because Munroe has alleged that Singh also harassed her. Defendant cites Finnane v. Pentel of Am., Ltd., No. 98 C 5187, 99 C 0189, 2000 WL 288437 at *11 (N.D.Ill. Mar. 14, 2000), as support for its assertion. In that case, the court found that "[i]t is unreasonable for an employee to expect a supervisor that is

27

sexually harassing her to report other allegations of harassment against the employee, which the supervisor learned during the course of his own harassment."  The court extended the rule in Parkins v. Civil Constructors of Ill., 163 F.3d 1027, 1037 (7th Cir. 1998) and Hetreed v. Allstate Ins. Co., No. 96 C 2021, 1999 WL 311728 at *6 (N.D. Ill. May 12, 1999), that it is unreasonable to expect an allegedly harassing supervisor to transmit complaints to management about himself.

The facts of Finanne are distinguishable from the facts in the instant case.  In Finnane, the plaintiff allegedly told her direct supervisor that she had been threatened by a Pentel manager, with whom she had formerly had a sexual relationship. 2000 WL 288437 at *11.  The plaintiff informed her supervisor of the threat during a dinner conversation in which the plaintiff alleged that her supervisor made sexual advances towards her and touched her inappropriately.  Id.  The court noted that the plaintiff presented no evidence that her dinner conversation was an official report of sexual harassment.  Id.  Under the circumstances of the case, the court found that the plaintiff could not reasonably rely on her supervisor to report the other Pentel manager's alleged harassment.  Id.

28

In the instant case, it is undisputed that Munroe complained to Singh about Guilbeault's conduct. Munroe made her complaints in the workplace and clearly intended to elicit Singh's assistance. On one occasion, Munroe showed Singh the offensive e-mails that she had received from Guilbeault so that Singh could see them for himself.

In reporting Guilbeault's harassment to Singh, Munroe acted in accordance with the Company's policy, and with Singh's alleged directive not to go over his head. See Distasio, 157 F.3d at 64-65 (employer could be held liable for co-worker harassment if the employee remained silent because of the supervisor's remark). Under the Company's sexual harassment policy, Singh was obligated to act on Munroe's complaints. The policy did not require Munroe to go an additional rung up the Company hierarchy to report harassment in the event that her direct supervisor was also harassing her. The Court finds that Munroe was entitled to rely on her complaints to Singh about Guilbeault's conduct. The Court further finds that there is a genuine issue of material fact regarding the Company's negligence in preventing Guilbeault's harassment.

II.  Munroe's State Law Claim

     Munroe alleged in her Complaint that the Defendant violated N.H. RSA 354-A in addition to violating Title VII.  N.H. RSA 354-A:7 makes it unlawful for an employer to discriminate against an individual in compensation or in terms, conditions or privileges of employment because of sex.  N.H. RSA 354-A:7(I).  The statute further provides that "harassment on the basis of sex constitutes unlawful sex discrimination."  N.H. RSA 354-A:7(V).  "Unwelcome sexual advances, requests for sexual favors, and other verbal, non-verbal or physical conduct of a sexual nature constitutes sexual harassment" if "[s]uch conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."  N.H. RSA 354-A:7(V)(c).

     This Court has supplemental jurisdiction to hear and decide Munroe's state law sexual harassment claim if it is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); Wisconsin Dept. of Corr. v. Schacht, 524 U.S. 381, 387 (1998) (supplemental jurisdiction allows federal courts to hear

30

and decide state-law claims that are part of the same case or controversy as claims within the court's original jurisdiction). Since there is no credible argument that Munroe's state law claim is not related to her federal Title VII claims, this Court has jurisdiction to decide Munroe's state law claim.

Defendant argues that it is entitled to summary judgment on Munroe's state law sexual harassment claim because N.H. RSA 354-A does not create a private right of action for those aggrieved by unlawful discrimination. In support of this assertion, Defendant cites Evans v. Work Opportunities Unlimited, Inc., 927 F. Supp. 554, 556 (D.N.H. 1996), Tsetseranos v. Tech Prototype, Inc., 893 F. Supp. 109, 119-120 (D.N.H. 1995), and Doukas v. Metropolitan Life Ins. Co., 882 F.Supp. 1197, 1200-01 (D.N.H. 1995). Those cases stand for the proposition that individuals alleging unlawful employment discrimination are limited to "seeking relief through the administrative process created by the statute and to obtaining judicial review of the results thereof in state court." Tsetseranos, 893 F. Supp. at 120. While formerly good law, Evans, Tsetseranos and Doukas were decided before N.H. RSA 354-A was amended on June 16, 2000. See N.H. RSA 354-A:21-a (Supp. 2002) (adding choice of forum provisions). Under N.H. RSA 354-

31

A:21-a, a plaintiff may now bring a civil action in court to remedy any practice made unlawful by Chapter 354-A if certain preconditions are met.  Id.  Thus, Defendant's argument does not comport with the existing law.[6]

Nevertheless, the Court finds that the Defendant is entitled to summary judgment on Munroe's 354-A claim because Munroe does not meet the statutory preconditions for bringing a civil action. The statute explicitly provides that a superior court trial shall not be available "to a complainant whose charge has been dismissed as lacking in probable cause who has not prevailed on an appeal to superior court pursuant to RSA 354-A:21, II(a)."[7] N.H. RSA 354-A:21a.  There is no evidence in the record that suggests that Munroe appealed the NHCHR's adverse probable cause finding in the state courts.  A litigant may not use supplemental jurisdiction to have a federal court instead of a state court

---

[6]Munroe filed her sexual harassment claim with the NHCHR, and the NHCHR made its probable cause determination, prior to the amendment to N.H. RSA 354-A that permits a private cause of action.  The Court does not address whether the amendment should apply retroactively to Munroe's claim since the Court finds that Munroe fails to meet the statutory preconditions for bringing a private cause of action.

[7]N.H. RSA 354-A:21, II(a), provides in relevant part that: "[w]hen the investigating commissioner finds no probable cause to credit the allegations in the complaint, the complaint shall be dismissed, subject to a right of appeal to superior court."

32

perform judicial review of a state administrative agency decision that a state statute assigns to state court. See e.g., Misischia v. Pirie, 60 F.3d 626, 631 (9th Cir. 1995) (rejecting plaintiff's attempt to invoke supplemental jurisdiction to by-pass the state court's authority to review the state administrative agency's denial of a dental license). Munroe forfeited her state law claim because she did not follow the statutory procedure that created the private right of action. Accordingly, the Court finds that Defendant's motion for summary judgment on Munroe's sexual harassment claim under N.H. RSA 354-A must be granted.

<u>Conclusion</u>

Defendant's motion for summary judgment (document no. 24) is denied with respect to Munroe's sexual harassment claims under Title VII. Defendant's motion is granted with respect to Munroe's sexual harassment claim under N.H. RSA 354-A.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:    October 18, 2002

cc:    Thomas J. Gleason, Esq.
       David C. Casey, Esq.
       Steven M. Gordon, Esq.